U.S. COURTS

AUG 20 2009

Rcvd_____ Filed_____ Time: 1:58 pm

CAMERON S. BURKE
CLERK, DISTRICT OF IDAHO

Jared K. Bedke
Bruce Byron Bedke
Martha Jean Bedke
c/o 42 East Basin Road
Oakley, Idaho (83346)
Phone: (208)862-3697
Email: jbedke@starband.net
Plaintiffs

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JARED K. BEDKE,<br>BRUCE BYRON BEDKE,<br>MARTHA JEAN BEDKE<br><br>  PLAINTIFFS,<br><br>VS.<br><br>SECRETARY OF THE INTERIOR,<br>KEN SALAZAR, in his official<br>capacity as Secretary of the Interior,<br>UNITED STATES DEPARTMENT<br>OF THE INTERIOR, an agency of<br>the United States, UNITED STATES<br>BUREAU OF LAND<br>MANAGEMENT, an agency of the<br>United States, TOM DYER, in his<br>official capacity as Idaho State BLM<br>Director, BILL BAKER, in his<br>official capacity as Twin Falls<br>District BLM Manager, KEN<br>MILLER, in his official capacity as<br>Burley BLM Field Manager,<br>MICHAEL COURTNEY, in his<br>official capacity as Rangeland<br>Management Specialist, LOREN | CASE NO._____<br><br><br><br>**COMPLAINT** |

COMPLAINT

August 20, 2009

Case No:                                    1

GOOD, in his official capacity as )
Special Agent-in-Charge Idaho BLM )
Law Enforcement Division, LISA )
SCHUTZBERGER, in her official )
capacity as District Law )
Enforcement Ranger, IDAHO )
STATE POLICE, an agency of the )
State of Idaho, IDAHO STATE )
BRAND DEPARTMENT, a )
department of the Idaho State Police, )
LARRY A. HAYHURST, in his )
official capacity as Idaho State )
Brand Inspector, BOYD RICHINS, )
in his official capacity as Deputy )
Brand Inspector, CASSIA COUNTY )
SHERIFF'S DEPARTMENT, a )
department of Cassia County, )
RANDY KIDD, in his official )
capacity as Cassia County Sheriff, )
CARY BRISTOL, in his official )
capacity as Cassia County )
Undersheriff, ROBERT NAY, in his )
official capacity as Sergeant Cassia )
County Sheriff's Department, )
PEGGY MARIZZA, in her official )
capacity as Sergeant Cassia County )
Sheriff's Department, JAMES R. )
SELLICK, in his official capacity as )
Cassia County Deputy Sheriff, )
PAUL CHRISTENSEN, in his )
official capacity as Cassia County )
Commissioner, CLAY HANDY, in )
his official capacity as Cassia )
County Commissioner, DENNIS )
CRANE, in his official capacity as )
Cassia County Commissioner, )
ALFRED E. BARRUS, in his )
official capacity as Cassia County )
Prosecuting Attorney, JOHN AND )
JANE DOES 1-50, )

DEFENDANTS.

August 20, 2009

PLAINTIFFS allege as follows:

## I

1. Plaintiff, Jared K. Bedke, is a natural individual and a Citizen of the United States domiciled in the State of Idaho, County of Cassia.

2. Plaintiff, Bruce Byron Bedke, is a natural individual and a Citizen of the United States domiciled in the State of Idaho, County of Cassia.

3. Plaintiff, Martha Jean Bedke, is a natural individual and a Citizen of the United States domiciled in the State of Idaho, County of Cassia.

## II

4. Defendant, Ken Salazar, is now duly appointed, employed, and acting as Secretary of the Interior of the Department of the Interior, a governmental subdivision of the United States of America and whose mailing address is Department of the Interior 1849 C Street, N.W. Washington DC 20240.

5. Defendant, United States Department of the Interior, is a governmental subdivision of the United States of America, whose mailing address is 1849 C Street NW Washington, DC 20240.

6. Defendant, United States Bureau of Land Management, is a governmental subdivision of the Department of the Interior of the United States of America, whose mailing address is 1849 C Street, N.W. Washington DC 20240.

7.  Defendant, Tom Dyer, is now and at all times material hereto was duly appointed, employed, and acting as Idaho State BLM Director for the Bureau of Land Management, a governmental subdivision of the Department of the Interior of the United States of America, whose mailing address is BUREAU OF LAND MANAGEMENT, Idaho State Office 1387 South Vinnell Way Boise, Idaho 83709.

8.  Defendant, Bill Baker, is now and at all times material hereto was duly appointed, employed, and acting as Twin Falls District Manager for the Bureau of Land Management, a governmental subdivision of the Department of the Interior of the United States of America, whose mailing address is BUREAU OF LAND MANAGEMENT, Twin Falls District 2536 Kimberly Road Twin Falls, Idaho 83301.

9.  Defendant, Ken Miller, at all times material hereto was duly appointed, employed, and acting as Burley Field Manager for the Bureau of Land Management, a governmental subdivision of the Department of the Interior of the United States of America, whose last known mailing address is BUREAU OF LAND MANAGEMENT, Burley Field Office 15 East 200 South Burley, Idaho 83318.

10.  Defendant, Michael Courtney, is now and at all times material hereto was duly appointed, employed, and acting as Rangeland Management Specialist for the Bureau of Land Management, a governmental subdivision of the Department of the Interior of the United States of America, whose mailing address is BUREAU OF LAND MANAGEMENT, Burley Field Office 15 East 200 South Burley, Idaho 83318.

11.  Defendant, Loren Good, is now and at all times material hereto was duly appointed, employed, and acting as Special Agent-in-Charge Law Enforcement Division for the Bureau of Land Management, a governmental subdivision of the Department of

the Interior of the United States of America, whose mailing address is BUREAU OF

LAND MANAGEMENT, Idaho State Office 1387 South Vinnell Way Boise, Idaho

83709.

12. Defendant, Lisa Schutzberger, is now and at all times material hereto was

duly appointed, employed, and acting as District Law Enforcement Ranger for the Bureau

of Land Management, a governmental subdivision of the Department of the Interior of

the United States of America, whose mailing address is BUREAU OF LAND

MANAGEMENT, Twin Falls District 2536 Kimberly Road Twin Falls, Idaho 83301.

13. Defendant, Idaho State Police, at all times material hereto was a

governmental subdivision of the State of Idaho, whose mailing address is P.O. Box 700

Meridian, Idaho 83680-0700.

14. Defendant, Idaho State Brand Department, at all times material hereto was a

department of the Idaho State Police, a governmental subdivision of the State of Idaho,

whose mailing address is P.O. Box 1177 Meridian Idaho 83680-1177.

15. Defendant, Larry A. Hayhurst, is now and at all times material hereto was

duly appointed, employed, and acting as State Brand Inspector for the Idaho Brand

Department a department of the Idaho State Police, a governmental subdivision of the

State of Idaho, whose mailing address is P.O. Box 1177 Meridian Idaho 83680-1177.

16. Defendant, Boyd Richins, is now and at all times material hereto was duly

appointed, employed, and acting as Deputy State Brand Inspector for the Idaho Brand

Department, a department of the Idaho State Police, a governmental subdivision of the

State of Idaho, whose mailing address is 12 North 400 West Burley, ID 83318.

17. Defendant, Cassia County Sheriff's Department, is now and at all times material hereto was a governmental subdivision of Cassia County, State of Idaho, whose mailing address is 129 East 14th Street Burley, Idaho 83318.

18. Defendant, Randy Kidd, is now duly appointed, employed, and acting as Cassia County Sheriff for the Cassia County Sheriff's Department, a governmental subdivision of Cassia County, State of Idaho, whose mailing address is 129 East 14th Street Burley, Idaho 83318.

19. Defendant, Cary Bristol, at all times material hereto was duly appointed, employed, and acting as Cassia County Undersheriff for the Cassia County Sheriff's Department, a governmental subdivision of Cassia County, State of Idaho, whose mailing address is 129 East 14th Street Burley, Idaho 83318.

20. Defendant, Robert Nay, at all times material hereto was duly appointed, employed, and acting as Cassia County Sheriff's Sergeant for the Cassia County Sheriff's Department, a governmental subdivision of Cassia County, State of Idaho, whose mailing address is 129 East 14th Street Burley, Idaho 83318.

21. Defendant, Peggy Marizza, at all times material hereto was duly appointed, employed, and acting as Cassia County Sheriff's Sergeant for the Cassia County Sheriff's Department, a governmental subdivision of Cassia County, State of Idaho, whose mailing address is 129 East 14th Street Burley, Idaho 83318.

22. Defendant, James R. Sellick,  at all times material hereto was duly appointed, employed, and acting as Cassia County Deputy Sheriff for the Cassia County Sheriff's Department, a governmental subdivision of Cassia County, State of Idaho, whose mailing address is 129 East 14th Street Burley, Idaho 83318.

23. Defendant, Paul Christensen, is now and at all times material hereto was duly appointed, employed, and acting as Cassia County Commissioner for Cassia County, State of Idaho whose mailing address is Cassia County Courthouse 1459 Overland Ave. Burley, Idaho 83318.

24. Defendant, Clay Handy, is now and at all times material hereto was duly appointed, employed, and acting as Cassia County Commissioner for Cassia County, State of Idaho whose mailing address is Cassia County Courthouse 1459 Overland Ave. Burley, Idaho 83318.

25. Defendant, Dennis Crane, is now and at all times material hereto was duly appointed, employed, and acting as Cassia County Commissioner for Cassia County, State of Idaho whose mailing address is Cassia County Courthouse 1459 Overland Ave. Burley, Idaho 83318.

26. Defendant, Alfred E. Barrus, is now and at all times material hereto was duly appointed, employed, and acting as Cassia County Prosecuting Attorney for Cassia County, State of Idaho whose mailing address is 1918 Overland Ave. P.O. Box 7 Burley, Idaho 83318.

27-76. Defendants, John and Jane Does 1-50, at all times material hereto were involved in the violation of the Plaintiffs' civil rights but their names and locations are as of yet unknown but will be found through discovery. The Plaintiffs reserve the right to amend their complaint and add the names and addresses of such Defendants when their identities become known.

**III**

77. This action arises under the United States Constitution, particularly under the provision of the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and under Federal law, particularly Title 42 of the United States Code, Sections 1983 and 1985.

## IV

78. This Court has jurisdiction of this cause under and by virtue of Title 28 of the United States Code, Sections 1331, 1332, and 1343.

## V

79. Each and all of the acts of Defendants alleged herein were done by defendants, and each of them, not as individuals, but under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the United States Department of the Interior, Bureau of Land Management, State of Idaho, and County of Cassia and under the various authorities of their respective offices.

### General Allegations

80. This complaint seeks monetary compensation for the violations of the Plaintiffs' Federally protected Constitutional rights. The violations stem from the seizure, termination of the Plaintiffs' ownership rights, and subsequent sale at public auction of the Plaintiffs' property without warrant or Court order providing for such seizure, termination of Plaintiffs' ownership rights, and subsequent sale of the Plaintiffs' property by the Defendants.

81. The Plaintiffs will show at trial that the Defendant United States Department of the Interior, and other Defendants acting under the authority of the United States Department of the Interior have an informal, established procedure of ignoring well

defined state law processes established to protect an owner's rights to due process. The Plaintiffs will show at trial that the Defendants also have an informal, established procedure of terminating an owner's rights without providing the opportunity for a pre-deprivation hearing.

82. The Plaintiffs will show at trial that the Defendant United States Department of the Interior, and other named and unnamed Defendants acting under the authority of the United States Department of the Interior, engaged in a selective prosecution of the Plaintiffs in violation of their Constitutionally protected rights to equal protection. The Plaintiffs will show at trial that the Defendant United States Department of the Interior, and other named and unnamed Defendants acting under the authority of the United States Department of the Interior, engaged in a vindictive and persecutory prosecution of the Plaintiffs in violation of their Constitutionally protected rights to equal protection.

83. The Plaintiffs will show at trial that Idaho State Brand Inspector, Larry Hayhurst, and other named and unnamed Defendants acted in conspiracy with the United States Department of the Interior and other named and unnamed Defendants in order to deprive the Plaintiffs of their civil rights by allowing the unwarranted seizure, termination of Plaintiffs' ownership rights, and subsequent sale of the Plaintiffs' property in violation of Constitution of the United States and the Idaho State Statutes established to protect the Plaintiffs' rights to the free enjoyment of their property and due process.

## Count 1

84. In 1878, the Plaintiffs' predecessors in interest settled in the Idaho territory pursuant to rights guaranteed by statute and treaty and began raising cattle upon the Goose Creek drainage.

85.   In 1934 the Taylor Grazing Act was passed, and the Plaintiffs' predecessors in interest filed claims to their range rights, and became parties to the subsequent adjudication.

86.   The range adjudication was completed in 1955.

87.   On February 6, 1963, all of the local parties to the range adjudication, including the Plaintiffs' predecessors in interest, entered into an agreement with the Bureau of Land Management for the separation of the ranges into both group and private allotments and to receive benefits in order to increase forage production consistent with potential production capacity.

88.   It was also agreed that the agreement would be carried out in accordance with the provisions of the Taylor Grazing Act.

89.   According to the agreement, the only condition that would not give the users the right to terminate the agreement was the failure of the Congress to appropriate funds, or the failure of any allotment of funds.

90.   Plaintiff Bruce Bedke continued on in the 1963 agreement with the Bureau of Land Management from 1963 until March 1, 2007.

91.   Under the Taylor Grazing Act, applicable only under section #5 of the 1963 agreement, 10 year term permits are signed by the users.

92.   The ten year term permit for the Goose Creek Allotment (common) was signed by Plaintiff Bruce Bedke in 1997 and was scheduled to expire on February 28, 2007.

93.   The ten year permit for the Bruce Bedke Private Allotment (formerly Jesse Bedke Private Allotment) was signed in 1999.

94. In 2004, a decision was implemented by the Bureau of Land Management against Plaintiff, Bruce Bedke, the essence of which denied him access to more than half of the common allotment and forced him to concentrate his cattle on the extreme south end of the Goose Creek Allotment.

95. This decision forced the Plaintiffs to drive their cattle over 20 miles to access their range rights instead of the usual 2 miles.

96. Later on in 2006, the Bureau of Land Management also attempted to force the entire maintenance of the fences surrounding this portion of the allotment upon the Plaintiffs despite agreements that stated the burden was to be shared with the rest of the common.

97. Bruce Bedke offered to maintain his pro-rated portion, but would not agree to maintain the fences entirely at his own expense.

98. Under the terms of the 1963 agreement, a new permit was offered to the Plaintiff, Bruce Bedke, by the Bureau of Land Management in February of 2007.

99. The duration of this offered permit/adhesion contract was 7 years.

100. The terms contained in this new adhesion contract bound Plaintiff, Bruce Bedke, not only to the 2004 decision forcing him onto the extreme south end of the allotment, but also to the exclusive maintenance of all of the fences surrounding this portion of the allotment at his expense.

101. Plaintiffs, in a good faith attempt to negotiate the terms of the contract, modified the offering and submitted the terms they'd be willing to accept.

102. The Bureau of Land Management responded with a new offering nearly identical to the first, but this time was for a term of 10 years instead of 7.

103.  Plaintiffs decided no longer to access the benefits offered and associated liabilities imposed by the 1963 agreement and declined to sign the newly offered contract.

104.  The permit signed in 1997 expired on February 28, 2007.

105.  On April 19, 2007, Defendants Ken Miller and Mike Courtney came to the residence of Bruce Bedke.

106.  The latest 10 year term permit was again offered to the Plaintiffs for their signature by Defendants Ken Miller and Mike Courtney.

107.  The terms were identical to that last offered.

108.  Defendants Ken Miller and Mike Courtney proceeded to misrepresent to the Plaintiffs the areas known as the Goose Creek Group allotment and the Bruce Bedke Private allotment were public lands and attempted to deceive the Plaintiffs into signing the offered adhesion contracts.

109.  Plaintiffs once again declined to sign pointing out to Defendants Miller and Courtney once again that the lands in dispute were not public lands.

110.  Instead, the Plaintiffs opted to exercise their adjudicated private property rights to the common allotment.

111.  On May 15, 2007, Plaintiffs turned their cattle out to graze on the common Goose Creek Allotment

112.  On May 24, 2007, the Plaintiffs received a Trespass Notice from Defendant Mike Courtney again misrepresenting that the areas grazed by the Plaintiffs cattle were public lands and subject to various laws and regulations only applicable to federal territories, insular possessions or enclaves.

113. In this trespass notice Defendant Courtney says that investigation has been made and "evidence tends to show that" the Plaintiffs are in trespass. This notice goes on to state that "We allege that you are violating law(s)" and it is their "opinion that" the Plaintiffs are "grazing cattle on the public lands without an authorization or permit."

114. On May 28, 2007, the Plaintiffs responded to the Trespass Notice and returned it for error.

115. In this letter of return, Plaintiffs pointed out the lawful United States Supreme Court definition of public lands and also that the Plaintiffs were not trespassing on public lands, but merely exercising their adjudicated property rights.

116. Plaintiffs acknowledged in this letter that Plaintiffs could be in error and that there could possibly be some public lands of which the Plaintiffs weren't aware.

117. Plaintiffs then requested in their letter that if there were indeed some "portion of the fee lands within the boundaries of the Goose Creek Allotment #4027 that currently are available for disposal and have no claims or rights of others attached to them and that our cattle are currently using those specific areas for grazing, we would ask that you provide such evidence for our review."

118. Plaintiffs also informed Defendant Courtney in this letter that the underlying statutes that he was relying upon only applied to the public lands, and not the property of the Plaintiffs.

119. Plaintiffs then concluded the letter by stating, "We thank you for your concern in this matter but are not aware of any lawful basis for the alleged trespass, and we will consider this matter brought to a close."

120. Plaintiffs have never received any evidence from Defendant Mike Courtney to support the allegations made in the Trespass Notice.

121. On June 8, 2007, Defendant Bill Baker visited the Plaintiffs at Bruce Bedke's residence.

122. Defendant Baker once again offered the 10 year term permit pursuant to the terms of the 1963 agreement.

123. Defendant Baker told the Plaintiffs that they were required to sign the permit to access the areas known as the Goose Creek Group allotment and the Bruce Bedke Private allotment.

124. Plaintiffs reviewed the document again, but chose not to receive the benefits offered and associated liabilities imposed by the unmodified adhesion contract, and declined to sign.

125. Plaintiffs continued to exercise their adjudicated profit a prendre rights on the common Goose Creek Allotment.

126. On July 19, 2007, Defendants Ken Miller and Mike Courtney delivered a letter from Defendant Bill Baker to the residence of Bruce Bedke.

127. This letter states "This correspondence documents our final attempt to authorize your use of public lands/resources on the Goose Creek Group allotment 04027 and the Bruce Bedke Private allotment 04026. You have until the close of business on July 26, 2007 to visit the Burley Field Office of Bureau of land Management (BLM) at 15 East 200 South, Burley Idaho to accept and sign said grazing permits; failure to do so, along with your continued grazing on public lands administered by the BLM without a

valid grazing authorization, will necessitate BLM proceeding with impoundment of your livestock."

128. This letter continued to misrepresent to the Plaintiffs that the areas known as the Goose Creek Group allotment and the Bruce Bedke Private allotment were public lands.

129. Defendant Bill Baker then went on to state that "There is no requirement that a contractual arrangement be in place before the BLM may exercise the authority granted to it by Congress for the management of these public lands."

130. By this statement, Defendant Baker continued to misrepresent to Plaintiffs the true character of the areas known as the Goose Creek Group allotment and the Bruce Bedke Private allotment.

131. This statement by Defendant Baker was a further attempt to deceive the Plaintiffs into abandoning their private property rights and signing the adhesion contract.

132. On July 20, the Plaintiffs received a phone call from a local reporter informing them that the Bureau of Land Management had just held a press conference declaring their intention to seize the Plaintiffs' cattle.

133. On July 24, 2007, the Plaintiffs filed suit in the Fifth District Court of Idaho seeking a quiet title on their adjudicated property in their grazing lands and for permanent injunctive relief in order to determine the nature and extent of the Plaintiffs property rights and to prevent the unwarranted seizure of their cattle.

134. On Tuesday, July 24, 2007, the Plaintiffs met with the then Cassia County Sheriff, Jim Higens.

135. Plaintiffs inquired of Sheriff Higens whether he had been presented with a warrant or Court order providing for the seizure of the Plaintiffs cattle.

135. Cassia County Sheriff Jim Higens told the Plaintiffs that he had been visited by Defendants Mike Courtney and Lisa Schutzberger and was aware of the upcoming seizure.

136. Cassia County Sheriff Jim Higens told the Plaintiffs that he had not been presented with a warrant or Court order providing for the seizure of the Plaintiffs' cattle.

137. Plaintiffs asked Sheriff Higens what the Sheriff's plans were concerning the impending unwarranted seizure.

138. Sheriff Higens informed the Plaintiffs that he would do nothing to stop the seizure.

139. Plaintiffs advised the Cassia County Sheriff that he was the highest law enforcement officer in the county and that it was his duty to protect the Plaintiffs' property from theft and if he didn't it would be a violation of their civil rights.

140. Sheriff Higens told the Plaintiffs that he would not act to prevent the unwarranted seizure of the Plaintiffs property unless the Plaintiffs presented him with a Court Order declaring him to do so or a call from the Cassia County Prosecuting Attorney instructing him to do so.

141. After the meeting with the Cassia County Sheriff, the Plaintiffs attempted to meet with the Cassia County Prosecuting Attorney, Al Barrus.

142. The Cassia County Prosecuting Attorney was not available for a meeting with the Plaintiffs.

143. Plaintiff Jared Bedke then called Defendant Deputy Brand Inspector Boyd Richins.

144. Plaintiff Jared Bedke asked Defendant Richins what his plans were as the Deputy State Brand Inspector.

145. Defendant Richins told Plaintiff Jared Bedke that his orders were to be there at the time of the seizure and to make sure that only the Plaintiffs' cattle were loaded on the trucks.

146. Plaintiff Jared Bedke asked if Defendant Richins had been provided with a warrant or Court order providing for the seizure of the cattle.

147. Defendant Richins told the Plaintiff Jared Bedke that he had not been presented with any warrant or Court order providing for the seizure of the cattle but he had his orders.

148. Plaintiff Jared Bedke informed Defendant Richins that nobody was authorized to move or sell the Plaintiffs' cattle without the Plaintiffs' express permission, and that he would expect Defendant Richins to do his job as defined by the Idaho State Statutes.

149. Defendant Richins told Plaintiff Jared Bedke that he was sorry, but he had his orders and that the Plaintiff was free to call his boss, State Brand Inspector Larry Hayhurst and provided Plaintiff Jared Bedke the phone number.

150. Plaintiff Jared Bedke called the Idaho State Brand Inspector's office.

151. Defendant Larry Hayhurst was in Texas and was unable to be reached.

152. On Wednesday July 25, 2007, the Plaintiffs met with Idaho District Court Judge John Melanson in an attempt to acquire a temporary restraining order against the unwarranted seizure of the Plaintiffs' cattle.

153. Judge Melanson declined to issue a temporary restraining order.

154. Plaintiffs once again met with Cassia County Sheriff Higens on the sidewalk outside of the Cassia County Sheriff's office.

155. Sheriff Higens was reluctant to meet with the Plaintiffs.

156. Sheriff Higens informed the Plaintiffs that he had talked with Cassia County Prosecuting Attorney Al Barrus and that he would not stop the unwarranted seizure of the cattle.

157. Plaintiffs drove home and then proceeded to begin to gather their cattle off of the disputed rangeland and place them into a private field.

158. On Thursday July 26, 2007, the Plaintiffs continued to gather the bulk of their cattle off of the disputed rangeland and place them into a private field.

159. On Friday July 27, 2007, Plaintiff Jared Bedke filed a Petition for Writ of Mandamus in the Fifth District Court of Idaho seeking to compel the Cassia County Sheriff, State Brand Inspector Larry Hayhurst, and Deputy Brand Inspector Boyd Richins to do their duty as defined by the Idaho Statutes.

160. On August 2, 2007, the Fifth District Court denied the Petition for Writ of Mandamus.

161. On August 14, 2007, Plaintiff filed a Motion to Reconsider the District Court's denial.

162. On August 21, 2007, Plaintiff Martha Bedke received a call on her cell phone as she was heading to Boise from Defendant Bill Baker informing her that he and other unnamed parties were seizing the Plaintiffs' cattle.

163. Plaintiffs Bruce and Jared Bedke were already heading up to their private field to check on their cattle and provide them with salt.

164. Plaintiffs Bruce and Jared Bedke observed two vehicles blocking the Birch Creek Road and suspected that a seizure of the Plaintiffs' cattle was occurring.

165. Plaintiffs access was blocked by a Jeep Rubicon with a BLM Law Enforcement decal on the side of it, and a Cassia County Sheriff's pickup.

166. Plaintiffs Bruce and Jared Bedke exited their vehicle and approached the other vehicles.

167. Defendants Cassia County Undersheriff Cary Bristol and Cassia County Sheriff's Sergeant R. Nay were standing on the ground with their arms folded across their chests.

168. Defendant Lisa Schutzberger was seated in the Jeep.

169. Plaintiff Jared Bedke inquired as to what they were doing and Defendants Bristol and Nay stated they were blocking the road.

170. Plaintiff Jared Bedke asked why they were blocking the road.

171. Defendant Bristol responded that they were asked to.

172. Plaintiff Jared Bedke informed them that it was his presumption that a seizure of the Plaintiffs' cattle was taking place and asked for a copy of the warrant or Court order allowing for the seizure to occur.

173. Defendant Bristol pointed to Defendant Schutzberger and deferred to her.

174. Defendant Schutzberger informed the Plaintiffs Bruce and Jared Bedke that she was in possession of a notice of intent to impound.

175. Plaintiff Jared Bedke asked for a copy of the warrant or Court order allowing for the seizure of the Plaintiffs' property.

176. Defendant Schutzberger once again responded that she had a notice of intent to impound.

177. Plaintiff Jared Bedke informed Defendant Schutzberger that a notice of intent to impound does not have the force and effect of law in Cassia County.

178. Plaintiff Jared Bedke then put it on the record that everyone present was in agreement that there existed no Court order allowing for the seizure of the Plaintiffs' cattle.

179. Plaintiff Jared Bedke then looked at Defendant Bristol and put him on notice that there was a crime being committed behind him, and that by doing nothing to stop this crime he and Defendant Nay were accomplices to the crime.

180. Defendant Bristol then said, "You two can leave now." and motioned for the Plaintiffs Bruce and Jared Bedke to go.

181. Plaintiff Jared Bedke collected the business cards of Defendants Bristol, Nay, and Schutzberger then turned to return to his vehicle.

182. The time was approximately 10:10 a.m.

183. As Plaintiffs Bruce and Jared Bedke were returning to their vehicle, Defendant Bristol demanded to see Plaintiff Jared Bedke's drivers license, registration, and proof of insurance.

184. Plaintiffs were unable to find these documents.

185.  Defendant Nay proceeded to issue a citation to Plaintiff Jared Bedke for failure to provide proof of registration and insurance.

186.  As the citation was being written up, another vehicle approached from behind the roadblock from the direction of where the seizure was taking place.

187.  The driver of the vehicle was Defendant Loren Good.

188.  Defendant Good did not have any business cards but provided his name to Plaintiff Jared Bedke.

189.  As Defendant Good walked forward, Defendant Schutzberger told him to back up because he was blocking her camera.

190.  Plaintiff Jared Bedke looked up and could see that there had been a dash-mounted video camera in Deputy Schutzberger's vehicle filming the entire sequence of events.

191.  Plaintiffs Bruce and Jared Bedke returned to their respective homes.

192.  That evening, Plaintiff Jared Bedke received a phone call from newspaper reporter Sven Berg informing him that 31 head of the Plaintiffs' livestock had been seized and were being held at the Burley Auction Yard.

193.  The actions of the Defendant United States Department of the Interior, and other named and unnamed Defendants acting under the authority of the United States Department of the Interior, constituted an unwarranted seizure of the Plaintiffs property when they seized the Plaintiffs' property without jurisdiction over the Plaintiffs or their property based upon a mere allegation without first obtaining a warrant or Court order. Said Defendants only acted pursuant to an informal, established procedure of ignoring well defined Constitutional guarantees and state law processes established to protect an

owner's rights to unwarranted searches and seizures, all in violation of 42 U.S.C. 1983, as well as the Fourth Amendment of the United States Constitution.

### Count 2

194. All of the above is incorporated herein as if set forth in full.

195. On August 23, 2007, the Plaintiffs received a letter from Defendant Bill Baker.

196. The letter informed the Plaintiffs that Defendants United States Department of the Interior (USDI), Bureau of Land Management (BLM), and those named and unnamed Defendants acting under the authority of the USDI and BLM had seized 31 head of the Plaintiffs' cattle.

197. The letter informed the Plaintiffs of the process to "settle this trespass and reclaim these cattle" that Defendants United States Department of the Interior (USDI), Bureau of Land Management (BLM), and those named and unnamed Defendants acting under the authority of the USDI and BLM had seized.

198. The process offered was simply payment of charges estimated to be in excess of $50,000 or negotiation of such cost.

199. The process offered did not provide the Plaintiffs an opportunity for a pre-deprivation hearing or any way to challenge the underlying basis of the seizure.

200. The Plaintiffs refused the letter dated August 22, 2007 for fraud.

201. In their letter of refusal, the Plaintiffs' stated that Defendant Baker's August 22, 2007 letter:

1. Is alleging violation of a mere regulation and not a statute or law.
2. Fails to establish any duty of the responding parties to conform to the regulations.
3. Does not comport with due process of law within the state of Idaho.

4. Fails to allege any necessary or essential facts sufficient to constitute the elements of a crime under oath.

5. Fails to allege any valid court order providing for the seizure of personal property.

6. Is in violation of rule's Rule 3, Rule 4, and Rule 9 of the Federal Rules of Criminal Procedure if it purports to allow and/or justify seizure of personal property without a *valid* court order.

7. The facts in this case have not been sworn to before a court of law.

8. Is unsupported by an affidavit under oath.

9. The BLM lacks personal, subject matter and venue jurisdiction over our property and Bruce and Jared Bedke.

202. On August 30, 2007, the Defendants USDI and BLM and those acting under their authority presumably extinguished the Plaintiffs' ownership rights to the cattle and attempted to sell the cattle at the Burley Auction Yard.

203. Due to public pressure and liability concerns, the owners of the Burley Auction Yard refused to sell the seized cattle.

204. The Defendants USDI and BLM and those acting under their authority then removed the livestock to a facility operated by the BLM.

205. On September 4, 2007, the Plaintiffs received another letter from Defendant Bill Baker.

206. Defendant Baker's September 4, 2007 letter served the Plaintiffs notice of the sale and procedure by which the seized livestock may be redeemed prior to the sale according to Defendant BLM's regulations.

207. Presumably, this means that the Plaintiffs' ownership rights had somehow been restored to a condition precedent to August 30, 2007.

208. Defendant Baker's September 4, 2007 letter informed the Plaintiffs that the seized cattle were to be sold by silent bid auction two days later on September 6, 2007.

209. Neither the Defendant Baker's September 4, 2007 letter, nor the BLM regulations provided the Plaintiffs with the opportunity for a second pre-deprivation hearing or any formal way to challenge the underlying basis for the seizure.

210. The Plaintiffs again refused the September 4, 2007 letter for fraud using the identical language stated in paragraph 201.

211. On September 6, 2007, Defendant United States Department of the Interior, and other named and unnamed Defendants acting under the authority of the United States Department of the Interior sold the Plaintiffs' cattle at silent public auction.

212. The actions of the Defendant United States Department of the Interior, and other named and unnamed Defendants acting under the authority of the United States Department of the Interior, constituted a violation of the Plaintiffs' rights to due process when they terminated the Plaintiffs' ownership rights to their property without having jurisdiction over the Plaintiffs or their property and without providing Plaintiffs with a pre-deprivation hearing. Said Defendants acted pursuant to an informal, established procedure of ignoring well defined Constitutional guarantees and state law processes established to protect an owner's rights to due process, all in violation of 42 U.S.C. 1983, as well as the Fifth and Fourteenth Amendments of the United States Constitution.

## Count 3

213. All of the above is incorporated herein as if set forth in full.

214. During the round up of cattle on or around August 20, 2007, several head of cattle belonging to people other than Plaintiffs were gathered along with the Plaintiffs' cattle.

215. The owners of these cattle did not have grazing permits or other permissions authorizing their cattle to be in the areas gathered.

216. The owners of these cattle were identified by Defendant Deputy Brand Inspector Boyd Richins.

217. Only the Plaintiffs' cattle were seized and removed to the Burley Auction Yard.

218. The cattle belonging to the other individuals were left confined.

219. The cattle were identified as belonging to two separate individuals.

220. The Defendants USDI and BLM and those named and unnamed Defendants acting under their authority, contacted one individual owner and told him that he could reclaim the animals from the temporary corrals without penalty or paying the pro-rated portion of the costs of gathering the cattle.

221. The actions of the Defendant United States Department of the Interior, and other named and unnamed Defendants acting under the authority of the United States Department of the Interior, constituted a violation of the Plaintiffs' rights to equal protection and due process when they selectively enforced the regulations against the Plaintiffs and not the other individuals whose cattle were gathered during the seizure all in violation of 42 U.S.C. 1983, as well as the Fifth and Fourteenth Amendments of the United States Constitution.

222. The actions of the Defendants described above were willful and malicious and demonstrate a vindictive and persecutory prosecution of the Plaintiffs. Plaintiffs' are therefore entitled to an award of punitive damages.

**Count 4**

COMPLAINT

August 20, 2009

223. All of the above is incorporated herein as if set forth in full.

224. Title 25 § 1106 of the Idaho Statutes establishes that it is the duty of the State Brand Inspector to enforce all of the laws of the state for the identification, inspection and transportation of livestock and sheep and all laws of the state designed or intended to prevent the theft of livestock and sheep.

225. Title 25 § 1301 of the Idaho Statutes establishes that it is a crime for any person not the owner or entitled to the possession of livestock to drive them away from their usual range unless the evidence produced on the trial shows that the accused acted in good faith and with an innocent purpose.

226. By acting in conspiracy with and allowing the Defendants USDI and BLM and those named and unnamed Defendants acting under their authority to seize and transport the Plaintiffs' livestock without first being presented with a warrant or Court order providing for the seizure of the Plaintiffs' livestock, Defendants Idaho State Police, Idaho State Brand Inspector Larry A. Hayhurst, and Deputy Brand Inspector Boyd Richins violated the Plaintiffs' rights to equal protection and due process of law all in violation of 42 U.S.C. § 1983 and 1985, as well as the Fifth and Fourteenth Amendments of the United States Constitution.

## Count 5

227. All of the above is incorporated herein as if set forth in full.

228. Title 25 § 1106 of the Idaho Statutes establishes that it is the duty of the State Brand Inspector to enforce all of the laws of the state for the identification, inspection and transportation of livestock and sheep and all laws of the state designed or intended to prevent the theft of livestock and sheep.

225.  Title 25 § 1126 of the Idaho Statutes states:

> Every citizen of Idaho who is the owner of any duly
> recorded brand is hereby authorized to require livestock in
> transit, or which is about to be shipped, transported or
> otherwise removed, to be inspected as required by law, for the
> purpose of determining whether or not such livestock has been
> duly inspected by an official brand inspector or peace officer.
> No fee shall be allowed to any such citizen for performing the
> rights and privileges herein above granted.

226.  On Monday August 27, 2007, Plaintiffs Bruce and Jared Bedke contacted

Defendant Deputy State Brand Inspector Boyd Richins for the purposes of performing a

brand inspection on their seized livestock being held at the Burley Auction Yard pursuant

to I.C. § 25-1126.

227.  Defendant Richins met the Plaintiffs at the Burley Auction Yard but refused

to provide a brand inspection of the cattle even though required by I.C. § 25-1126.

228.  On August 30, 2007, Plaintiffs Bruce and Jared Bedke made written demand

upon Defendant Richins to inspect the livestock to determine the lawful owner of the

cattle pursuant to I.C. § 25-1126.

229.  Defendant Richins again refused to perform the duties required of the

Deputy Brand Inspector pursuant to I.C. §25-1126.

230.  Title 25 § 1182 of the Idaho Statutes states:

> The state brand inspector, all deputy brand inspectors
> and all peace officers authorized by the laws of the state of
> Idaho to enforce brand inspection laws, are authorized and it is
> hereby made their duty to arrest with or without warrant any
> person or persons found violating any of the provisions of the
> brand inspection laws of the state of Idaho when detected in the
> act of violating such law or laws or found with livestock
> unlawfully in their possession at the time of such arrest.
> Arrests made pursuant to the brand inspection laws of the state
> of Idaho may be affected by:

(1) Taking the offender into custody for immediate appearance before the nearest available magistrate having jurisdiction; or,

(2) Issuing a citation to the offender to appear before a magistrate. Said citation shall bear the date, time and place for the offender's appearance before a magistrate; the name and address of the offender, the offense charged, the approximate location where and the approximate time when the offense was committed and other such essential and descriptive information related to the offense as may be prescribed by the state brand board by rule or regulation adopted by said state brand board. The citation shall be signed by the offender notified to appear and he shall be given a copy thereof and thereupon may be released from custody. A citation shall be issued only by mutual agreement of the arresting officer and the offender as evidenced by both their signatures on said citation. Failure of the offender to appear at the time and place specified in the citation shall constitute a misdemeanor and shall be cause for issuance of a warrant for said offender's arrest.

Whenever any person is given a written citation containing a notice to appear as hereinabove provided, the magistrate shall be a magistrate within the county where the offense charged is alleged to have been committed and who has jurisdiction of the offense, or any other magistrate in any other county with jurisdiction over the alleged offense which is agreed to be more convenient by both the officer and the offender. Whenever an offender is taken immediately before a magistrate as hereinabove provided, it shall be any magistrate within the state of Idaho who has jurisdiction of the alleged offense.

231. On August 30, 2007, Plaintiffs Bruce and Jared Bedke made written demand upon Defendant Richins to arrest all person(s) attempting to transport the Plaintiffs' cattle without a transportation certificate signed by the Plaintiffs providing for the transportation of the cattle as required by I.C. § 25-1182.

232. Defendant Richins refused to perform the duties required of the Deputy Brand Inspector pursuant to I.C. §25-1182.

233. On September 8, 2007 Plaintiffs received in the mail a copy of a brand inspection signed by Defendant Richins transferring ownership of the Plaintiffs' cattle to Barry Dalton and Paul Jacobsen without the knowledge or approval of the Plaintiffs

COMPLAINT

August 20, 2009

stemming from the sale of the Plaintiffs' livestock on September 7, 2007. The funds collected from the sale of the Plaintiffs' livestock were retained by Idaho State Brand Inspector Larry Hayhurst.

234. By acting in conspiracy with and allowing the Defendants USDI and BLM and those named and unnamed Defendants acting under their authority to seize, transport, and unlawfully detain the Plaintiffs' livestock without first being presented with a warrant or Court order providing for the seizure, transport, and detention of the Plaintiffs' livestock, Defendants Idaho State Police, Idaho State Brand Inspector Larry A. Hayhurst, and Deputy Brand Inspector Boyd Richins violated the Plaintiffs' rights to equal protection and due process of law all in violation of 42 U.S.C. § 1983 and 1985, as well as the Fifth and Fourteenth Amendments of the United States Constitution.

235. By refusing to perform the duties required by the Idaho Statutes and not performing a brand inspection or arresting the violators of the Idaho laws when demand was place upon them by the Plaintiffs under Idaho law, not providing Plaintiffs with a pre-deprivation hearing prior to extinguishing and transferring the Plaintiffs ownership rights to the livestock, and taking possession of the funds derived from the sale of Plaintiffs' livestock, Defendants Idaho State Police, Idaho State Brand Inspector Larry A. Hayhurst, and Deputy Brand Inspector Boyd Richins violated the Plaintiffs' rights to equal protection and due process of law all in violation of 42 U.S.C. § 1983 and 1985, as well as the Fifth and Fourteenth Amendments of the United States Constitution.

## Count 6

236. All of the above is incorporated herein as if set forth in full.

237.  Title 31 § 2202 of the Idaho Statutes establishes that it is the duty of the County Sheriff to enforce all penal provision and statutes of the state.

238.  Title 25 § 2201 et. seq. of the Idaho Statutes defines the procedures set forth by Idaho law for dealing with the alleged trespass of animals.

239.  Title 18 § 703 states:

> Every public officer, or person pretending to be a public officer, who, under the pretense or color of any process or other legal authority, arrests any person or detains him against his will, or seizes or levies upon any property, or dispossesses any one of any lands or tenements, without a regular process or other lawful authority therefor, is guilty of a misdemeanor.

240.  On Wednesday August 22, 2007, the day after the seizure, Plaintiffs Bruce and Jared Bedke drove down to the Burley Auction Yard to view their seized livestock.

241.  Plaintiffs Bruce and Jared Bedke asked one of the owners of the Burley Auction Yard, Lance Udy, if he'd been presented with a warrant or Court order providing for the detention of the Plaintiffs' livestock.

242.  Lance Udy informed the Plaintiffs that he had been presented with no warrant or Court order.

243.  Lance Udy informed the Plaintiffs that he had only been asked if the livestock could be dropped off at the auction yard and he'd told them yes.

244.  Plaintiffs Bruce and Jared Bedke asked Lance Udy if he'd have any objection to the Plaintiffs removing their cattle from his facility.

245.  Lance Udy told the Plaintiffs that he would have no objection because they were the Plaintiffs' cattle.

246. Plaintiffs made arrangements with commercial hauler Bart Moultrie to haul the cattle back to the Plaintiffs ranch.

247. Bart Moultrie could not arrive until around 1:00 p.m. to begin loading.

248. Plaintiffs left the Burley Auction Yard and went to eat lunch.

249. At approximately 11:30, Plaintiffs received a phone call from Bart Moultrie informing them that Mr. Moultrie had been contacted by the Cassia County Sheriff's office and that the Cassia County Sheriff wasn't going to allow the cattle to be removed from the Burley Auction Yard.

250. Plaintiffs finished their lunch and drove back to the Burley Auction Yard.

251. Upon arriving at the Burley Auction Yard, Plaintiffs Bruce and Jared Bedke were met by two Cassia County Sheriff's Deputies, Defendant Peggy Marizza and Defendant James R. Sellick.

252. Defendants Marizza and Sellick informed the Plaintiffs that they would not allow the Plaintiffs' cattle to be removed from the Burley Auction Yard by the Plaintiffs.

253. Plaintiff Jared Bedke asked if Defendants Marizza and Sellick had been presented with a warrant or Court order providing for the detention of the Plaintiffs' livestock.

254. Defendant Marizza answered that she was not aware of one but she was just following orders.

255. Plaintiff Jared Bedke informed Defendants Marizza and Sellick that if they detained the Plaintiffs' livestock without a warrant or a Court order providing for such a detention, that they would be violating the Plaintiffs' civil rights.

256. Defendant Marizza repeated that she was just following orders and that the Plaintiffs would have to talk to then Cassia County Sheriff Jim Higens.

257. Plaintiffs left the Burley Auction Yard and drove to the Cassia County Sheriff's office.

258. Plaintiffs Bruce and Jared Bedke once again met with the then Cassia County Sheriff Jim Higens.

259. Plaintiff Jared Bedke asked then Cassia County Sheriff Higens if he had been provided with a warrant or Court order providing for the seizure or detention of the Plaintiffs' cattle.

260. Sheriff Higens admitted he still hadn't received any such document.

261. Plaintiff Jared Bedke inquired of Sheriff Higens if he had given orders preventing the removal of the Plaintiffs' cattle from the Burley Auction Yard and why he was preventing the Plaintiffs from reclaiming their cattle.

262. Sheriff Higens informed the Plaintiffs that he had given the orders to his deputies and that the cattle were federally seized and he wasn't getting in the middle of it.

263. Plaintiff Jared Bedke asked for a written copy of the order given by Sheriff Higens and informed Sheriff Higens that if the sheriff had not been presented with a warrant or Court order providing for the seizure and detention of the cattle that the cattle were being unlawfully detained and that Sheriff Higens was violating the Plaintiffs' civil rights by doing so.

264. Sheriff Higens refused to put the order in writing and provide the Plaintiffs with a copy of the order but said, "I won't lie about it."

265. By acting in conspiracy with and allowing the Defendants USDI and BLM and those named and unnamed Defendants acting under their authority to seize, transport, and detain the Plaintiffs' livestock without first being presented with a warrant or Court order providing for the seizure and detention of the Plaintiffs' livestock, Defendants Cassia County Sheriff's Department, Cassia County Sheriff Randy Kidd, Cassia County Undersheriff Cary Bristol, Cassia County Sheriff's Sergeant Robert Nay, Cassia County Deputy Peggy Marizza, and Cassia County Deputy James Sellick violated the Plaintiffs' rights to equal protection and due process of law all in violation of 42 U.S.C. § 1983 and 1985, as well as the Fourth, Fifth and Fourteenth Amendments of the United States Constitution as well as Article 1 Section 17 of the Idaho State Constitution.

## Count 7

266. All of the above is incorporated herein as if set forth in full.

267. On September 6, 2007 Defendant Mike Courtney went on a locally broadcast radio program hosted by Zeb Bell and read a statement issued by the Defendant BLM.

268. In this statement, Defendant Courtney identified several of the above named Defendants as working in cooperation with the Defendant BLM in the seizure and upcoming sale of the Plaintiffs' cattle.

269. Among those identified as co-conspirators were Defendants Cassia County Prosecuting Attorney Alfred Barrus, the Cassia County Commissioners, and the Idaho State Brand Inspector Larry Hayhurst.

270. By acting in conspiracy with and allowing the Defendants USDI and BLM and those named and unnamed Defendants acting under their authority to seize, transport, and detain the Plaintiffs' livestock without first being presented with a warrant or Court order providing for the seizure and detention of the Plaintiffs' livestock, Defendants Cassia County Prosecuting Attorney Alfred Barrus, Cassia County Commissioner Dennis Crane, Cassia County Commissioner Paul Christensen, and Cassia County Commissioner Clay Handy violated the Plaintiffs' rights to equal protection and due process of law all in violation of 42 U.S.C. § 1983 and 1985, as well as the Fourth, Fifth and Fourteenth Amendments of the United States Constitution as well as Article 1 Section 17 of the Idaho State Constitution.

## Request for Relief

WHEREFORE Plaintiffs request as follows:

1. For a trial to be held on the issues framed in this Complaint; and

2. That on Count 1 of the Complaint, Plaintiffs receive a general verdict and judgment in the amount of $150,000 face value payable in gold, silver, or platinum coin of the United States of America in actual damages; and

3. That on Count 2 of the Complaint, Plaintiffs receive a general verdict and judgment in the amount of $150,000 face value payable in gold, silver, or platinum coin of the United States of America in actual damages; and

4. That on Count 3 of the Complaint, Plaintiffs receive a general verdict and judgment in the amount of $150,000 face value payable in gold, silver, or platinum coin of the United States of America in actual damages and an

additional $300,000 face value payable in gold, silver, or platinum coin of the United States of America punitive damages; and

5. That on Count 4 of the Complaint, Plaintiffs receive a general verdict and judgment in the amount of $150,000 face value payable in gold, silver, or platinum coin of the United States of America actual damages; and

6. That on Count 5 of the Complaint, Plaintiffs receive a general verdict and judgment in the amount of $300,000 face value payable in gold, silver, or platinum coin of the United States of America actual damages; and

7. That on Count 6 of the Complaint, Plaintiffs receive a general verdict and judgment in the amount of $150,000 face value in gold, silver, or platinum coin of the United States of America actual damages; and

8. That on Count 7 of the Complaint, Plaintiffs receive a general verdict and judgment in the amount of $150,000 face value in gold, silver, or platinum coin of the United States of America actual damages; and

9. That the Court grant Plaintiffs costs and fees and such other relief as to which Plaintiffs may show themselves entitled.


Respectfully submitted,



Jared K. Bedke, Pro Se



Pro Se

August 20, 2009

Bruce Byron Bedke, Pro Se

_Martha J Bedke_
Martha Jean Bedke, Pro Se   _Pro Se_

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declare under penalty of perjury that he/she/they are the plaintiffs in the above action, that he/she/they have read the above complaint and that the information contained therein is true and correct to the best of the Plaintiffs' knowledge and belief.  28 U.S.C. § 1746; 18 U.S.C. § 1621.

_Jared Bedke, Pro Se_
Jared K. Bedke, Pro Se

_Bruce Bedke_
Bruce Byron Bedke, Pro Se   _Pro se_

_Martha J Bedke_
Martha Jean Bedke, Pro Se   _pro Se_