1
2
3
4
5
6
7                     IN THE UNITED  STATES  DISTRICT  COURT
8                        FOR  THE  DISTRICT  OF IDAHO
9
10    JARED BEDKE, BRUCE BYRON          )        Case No. CV-09-399-E-DOC
      BEDKE, MARHA JEAN BEDKE           )
11                                      )
              Plaintiffs,               )        **O R D E R** GRANTING STATE
12                                      )        **DEFENDANTS' MOTION TO**
              v.                        )        **DISMISS; GRANTING UNITED**
13                                      )        **STATES' MOTION TO DISMISS**;
      SECRETARY OF THE INTERIOR,        )        **GRANTING IN PART AND**
14    KEN SALAZAR, et al.               )        **DENYING IN PART COUNTY**
                                        )        **DEFENDANTS' MOTION FOR**
15            Defendants.               )        **SUMMARY JUDGMENT**
                                        )
16
17    _____
18          Before the Court is Defendants Idaho State Police, the Idaho State Brand Department,
19    Larry Hayhurst and Boyd Richins' ("State Defendants") Motion to Dismiss Pursuant to Federal
20    Rule of Civil Procedure 12(b)(1), (2), and (6) ("State Defendants' Motion to Dismiss");
21    Defendants Secretary of the Interior, United States Department of Interior, United States Bureau
22    of Land Management, Tom Dyer, Bill Baker, Ken Miller, Michael Courtney, Loren Good, and
23    Lisa Schutzberger's ("Federal Defendants") Motion to Dismiss Pursuant Rule 12(b)(1) ("Federal
24    Defendants' Motion to Dismiss"); Defendants Cassia County Sheriff's Department, Randy Kidd,
25    Cary Bristol, Robert Nay, Peggy Marizza, James R. Sellick, Paul Christensen, Clay Handy,
26    Dennis Crane, and Alfred E. Barrus' ("County Defendants") Motion for Summary Judgment
27    ("County Defendants' Motion for Summary Judgment"); County Defendants' Motion to Strike
28    Declaration of Jared Bedke ("County Defendants' Motion to Strike"); and Plaintiffs' Motion for

Time ("Plaintiffs' Motion for Time").  Docket Nos. 12, 15, 43, 48, and 52.  After having considered the moving, opposing, and reply papers thereon, as well as oral argument by the parties, the State Defendants' Motion to Dismiss is GRANTED, the Federal Defendants' Motion to Dismiss is GRANTED, and the County Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, and the Motion to Strike and Motion for Time are DENIED AS MOOT.

## I.    BACKGROUND

Jared K. Bedke, Bruce B. Bedke, and Martha J. Bedke (collectively "Plaintiffs") are cattle ranchers operating in Idaho.  Plaintiffs' predecessors in interest filed range rights in Idaho under the Taylor Grazing Act in 1955.  Pursuant to a range adjudication in 1963 between private cattle ranchers and the federal government, range allotments used as grazing land were separated into private and public allotments.  Plaintiffs operated under the 1963 range agreement with the Bureau of Land Management ("BLM") from 1963 to March 1, 2007.

Under the Taylor Grazing Act, ranchers are required to sign 10 year term permits to operate on the public and private allotments.  Plaintiffs signed 10 year term permits to graze their cattle on Goose Creek ("GC") (1997-2007), which is an allotment used commonly amongst many ranchers, and Bruce Bedke Private Allotment ("BPA") (1999-2009), which as its name suggests is a private allotment.  There is a dispute as to whether GC is a public allotment owned by the government or a private allotment, privately owned but commonly shared amongst many ranchers.

In 2004, BLM allegedly implemented a policy which in effect deprived Plaintiffs access to more than half of GC and forced them to graze on the south end of GC which was an 18 mile cattle drive further than where Plaintiffs' cattle normally grazed.  In 2006, BLM attempted to force Plaintiffs to cover the cost of maintaining the fences around GC, even though such expenses were supposed to be shared amongst all the ranchers using GC.  Plaintiffs refused.

Upon expiration of Plaintiffs' GC permit in 2007, BLM offered a new permit contract for a term of seven years, which Plaintiffs purport to be a contract of adhesion.  The terms of the new permit contractually bound Plaintiffs to the south end of GC and maintenance of the GC fences.

1  Plaintiffs offered a counter offer, which was rejected by the government.  Plaintiffs and the

2  government could not come to an agreement on a new permit even after several attempts because

3  neither Plaintiffs nor BLM would change their offers.

4          Rather than sign a new permit agreement, Plaintiffs exercised their alleged private

5  property rights in GC.  Plaintiffs continued to graze their cattle on GC.  On May 23, 2007,

6  Plaintiffs received a trespass notice from the government stating that GC was public land and that

7  Plaintiffs were grazing cattle on public land without a permit.  On May 28, 2007, Plaintiffs sent a

8  letter contesting that GC was public land.  On June 8, 2007, the government again offered

9  Plaintiffs a permit to graze cattle on GC, subject to the conditions Plaintiffs previously rejected.

10 Plaintiffs again rejected the government's proposal.  On July 19, 2007, the government sent a

11 final notice stating that Plaintiffs must apply for a permit to graze their cattle on GC, and that

12 failure to do so would result in the impoundment of Plaintiffs' cattle.

13         On July 20, 2007, Plaintiffs filed suit in Idaho state court seeking to quiet title to GC and

14 BPA and for permanent injunctive relief.  On July 25, 2007, the Idaho state court declined to

15 issue a temporary restraining order.  On July 27, 2007, Plaintiffs filed a petition for writ of

16 mandamus in Idaho state court, which was denied.  On August 21, 2007, the government notified

17 Plaintiffs that they were in the process of seizing Plaintiffs' cattle.  The government seized 31

18 head of cattle.

19         On August 23, 2007, Plaintiffs received a letter from the government notifying them that

20 Plaintiffs must pay a fine of $50,000 to reclaim their cattle.  Plaintiffs were not offered an

21 opportunity to contest the seizure.  On September 4, 2007, the government informed Plaintiffs

22 that the cattle would be sold.  On September 6, 2007, the government sold 31 head of Plaintiffs'

23 cattle at a silent auction.

24         The state court case was removed to federal court in October 2007 and resolved through

25 mediation held by this Court.  *See Bedke, et al. v. Baker, et al.*, Case No. 4:07-CV-00418-DOC.

26 The parties entered a settlement and stipulated dismissal order that resolved the action on August

27 7, 2008.  *Id.* at Docket No. 54.

28         In this action, Plaintiffs sue federal, state, and local county entities and officers.  They

1   assert causes of action under 28 U.S.C. Sections 1983 and 1985; the Fourth, Fifth, and Fourteenth

2   Amendments to the United States Constitution; and Article 1 Section 17 of the Idaho State

3   Constitution.  Plaintiffs also allege violations of Title 31 Section 2202, Title 25 Section 2201 *et*

4   *seq.*, and Title 18 Section 703 of the Idaho Statutes but do not include those violations as separate

5   causes of action.

6       **II.**    **LEGAL STANDARD**

7           **A.**    **Rule 12(b)(1)**

8         Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if the

9   Court lacks subject matter jurisdiction to adjudicate the claims.  Once subject matter jurisdiction

10  is challenged, the burden of proof is placed on the party asserting that jurisdiction exists.  *Scott v.*

11  *Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (holding that "the party seeking to invoke the court's

12  jurisdiction bears the burden of establishing that jurisdiction exists").  Accordingly, the Court will

13  presume lack of subject matter jurisdiction until the plaintiff proves otherwise in response to the

14  motion to dismiss.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct.

15  1673, 1675 (1994).

16        In evaluating a Rule 12(b)(1) motion, the question of whether the Court must accept the

17  complaint's allegations as true turns on whether the challenge is facial or factual.  A facial attack

18  is one in which subject matter jurisdiction is challenged solely on the allegations in the complaint,

19  attached documents, and judicially noticed facts.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035,

20  1039 (9th Cir. 2004).  In a facial attack, the moving party asserts that the lack of federal subject

21  matter jurisdiction appears on the "face of the complaint."  *Warren v. Fox Family Worldwide,*

22  *Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  In the case of a facial attack, the Court is required to

23  accept as true all factual allegations set forth in the complaint.  *Whisnant v. United States*, 400

24  F.3d 1177, 1179 (9th Cir. 2005).

25        In contrast, a factual attack (or a "speaking motion") is one in which subject matter

26  jurisdiction is challenged as a matter of fact, and is based on evidence outside of the pleadings.

27  *Safe Air*, 373 F.3d at 1039.  In assessing the validity of a factual attack, the Court is not required

28  to presume the truth of the plaintiff's factual allegations.  *Safe Air*, 373 F.3d at 1039.

1    **B.    Rule 12(b)(6)**

2        Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a

3    plaintiff's allegations fail to state a claim upon which relief can be granted.  Once it has

4    adequately stated a claim, a plaintiff may support the allegations in its complaint with any set of

5    facts consistent with those allegations.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969

6    (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)).  Dismissal for

7    failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can

8    prove "no set of facts" in support of its claim that would entitle it to relief.  *Id.* at 1968.  If the

9    complaint "lacks a cognizable legal theory" or "sufficient facts alleged under a cognizable legal

10   theory," it must be dismissed.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

11   1990).

12       Under a 12(b)(6) motion analysis, the Court must accept as true all factual allegations in

13   the complaint and must draw all reasonable inferences from those allegations, construing the

14   complaint in the light most favorable to the plaintiff.  *Guerrero v. Gates*, 442 F.3d 697, 703 (9th

15   Cir. 2006); *Balistreri*, 901 F.2d at 699.  Dismissal without leave to amend is appropriate only

16   when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by

17   amendment.  *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d

18   1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

19       In evaluating a 12(b)(6) motion, review is "limited to the contents of the complaint."

20   *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).  However, exhibits attached

21   to the complaint, as well as matters of public record, may be considered in determining whether

22   dismissal was proper without converting the motion to one for summary judgment.  *See Parks*

23   *School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Mack v. South Bay*

24   *Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Further, the Court may consider

25   documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the

26   documents; (2) the document is central to the plaintiff's claim; and (3) no party questions the

27   authenticity of the copy attached to the 12(b)(6) motion."  *Marder v. Lopez*, 450 F.3d 445, 448

28   (9th Cir. 2006).  "The Court may treat such a document as 'part of the complaint, and thus may

1  assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.*

2  　　　　　**C.　　Summary Judgment**

3  　　　　Summary judgment is proper if "the pleadings, the discovery and disclosure materials on

4  file, and any affidavits show that there is no genuine issue as to any material fact and that the

5  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

6  　　　　The Court must view the facts and draw inferences in the manner most favorable to the

7  non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993 (1962);

8  *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992).  The moving party bears the

9  initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need

10 not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.

11 Ct. 2505 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548 (1986).  When

12 the non-moving party bears the burden of proving the claim or defense, the moving party can

13 meet its burden by pointing out that the non-moving party has failed to present any genuine issue

14 of material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

15 　　　　Once the moving party meets its burden, "an opposing party may not rely merely on

16 allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise

17 provided in this rule–set out specific facts showing a genuine issue for trial.  If the opposing party

18 does not so respond, summary judgment should, if appropriate, be entered against that party."

19 Fed. R. Civ. P. 56(e)(2); *see also Anderson,* 477 U.S. at 248-49.  Furthermore, a party cannot

20 create a genuine issue of material fact simply by making assertions in its legal papers.  There

21 must be specific, admissible evidence identifying the basis for the dispute. *S.A. Empresa de*

22 *Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1980).

23 The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be

24 insufficient; there must be evidence on which the jury could reasonably find for [the opposing

25 party]." *Anderson*, 477 U.S. at 252.

26 **III.　DISCUSSION**

27 　　　　**A.　　Res Judicata**

28 　　　　The Federal and County Defendants argue that this action is precluded under res judicata

grounds due to the action brought in 2007.   The Federal and County Defendants are asserting res judicata defensively to prevent successive suits.  The purpose of the judicially-created doctrine of res judicata is "to conserve judicial resources, protect litigants from multiple lawsuits, and foster certainty and reliance in legal relations." *U.S. v. ITT Rayonier, Inc.*, 627 F.2d 996, 1000 (9th Cir. 1980).  A party may be precluded from bringing a claim under the doctrine of res judicata "whenever  there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (quoting *Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1143 n. 3 (9th Cir.2002)).

In determining whether preclusion is appropriate, the Court first compares the 2007 complaint to the complaint in this action.  On July 24, 2007, Bruce Byron Bedke and Jared K. Bedke filed a Complaint ("2007 Complaint") in the District Court of the Fifth Judicial District for the State of Idaho, Cassia County.  The Complaint asserted causes of action of quiet title and permanent injunctive relief against Bill Baker, Ken Miller, Michael Courtney, Craig Hawker, Richard Jones, Gary Jones, Picket Ranch & Sheep Co., John Does 1-10, All Real Persons, and All Fictional Entities.  The United States was later added as a party.  The action was removed from state court to the United States District Court for the District of Idaho. The parties entered into mediation, and the action was resolved through a stipulated Order of Dismissal and Consent Decree dated August 1, 2008, which contained the terms of a settlement.  The Order, *inter alia*, set forth an agreed-upon permit for the Bruce Bedke Private Allotment and Goose Creek Group Allotment through 2018.  The Order dismissed the action with prejudice as to all Defendants.

Plaintiffs assert additional facts in this action to those asserted in the 2007 action.  As compared to the current complaint, the 2007 Complaint contains the same historical allegations as the instant complaint regarding the ownership of the Bruce Bedke Private Allotment and Goose Creek Group Allotment.  It also contains the same allegations regarding the permit offered to the Bedkes in February 2007 and the Bedkes' refusal to accept the permit.  However, the 2007 Complaint does not contain any allegations after July 19, 2007 when the letter from Bill Baker was received stating that if the permits were not signed by July 26, 2007, BLM would impound

1   the Bedkes' livestock.  It does not contain any allegations about the actual impoundment or sale

2   of the livestock.

3          The Defendants that were common to the 2007 Complaint were Bill Baker, Ken Miller,

4   and Michael Courtney, all federal BLM employees.  Plaintiffs have added several federal, Idaho

5   state, and Cassia County agencies, departments, and employees in the 2009 action.  In addition,

6   they assert different causes of action. The 2007 Complaint was for quiet title and a preliminary

7   injunction, whereas this complaint seeks damages due to violations of Plaintiffs' rights under

8   Section 1983, 1985, and the United States and Idaho Constitution.

9                                i.      **Identity of Claims**

10         When deciding whether there is identity of claims, courts look to four criteria, which are

11  not applied mechanistically: "(1) whether the two suits arise out of the same transactional nucleus

12  of facts; (2) whether rights or interests established in the prior judgment would be destroyed or

13  impaired by prosecution of the second action; (3) whether the two suits involve infringement of

14  the same right; and (4) whether substantially the same evidence is presented in the two actions."

15  *Mpoyo v. Litton Electro-Optical Systems*, 430 F.3d 985 (9th Cir. 2005) (citing *Chao v. A-One*

16  *Med. Servs., Inc.*, 346 F.3d 908, 921 (9th Cir.2003)).  The common nucleus of facts factor is the

17  most important in the analysis.  *International Ambassador Programs, Inc. v. Archexpo*, 68 F.3d

18  337, 340-41 (9th Cir.1995).

19         The two suits arise from the same transactional nucleus of facts, and the rights established

20  in the prior judgment could be destroyed or impaired because Defendants understood that all

21  claims regarding the trespass had been settled and resolved.  Plaintiffs argue that there is no

22  identity of claims because the allegations in the 2007 complaint were limited to the date on which

23  the lawsuit was filed, July 24, 2007.  As such, it did not contain allegations about the

24  impoundment and sale of the cattle, and Plaintiffs should be entitled to bring a separate action as

25  to these claims.  Defendants argue, however, that the relevant inquiry is whether the claims *could*

26  *have* been brought in the 2007 action, not whether they were brought.  Because the stipulated

27  settlement dismissal was not agreed upon until August 1, 2008, nearly a year after the

28  impoundment and sale of Plaintiffs' cattle, Defendants argue that the Plaintiffs could have and

should have amended the complaint to include those allegations.  "Newly articulated claims based on the same nucleus of facts" may still be subject to preclusion "if the claims could have been brought in the earlier action."  *Tahoe-Sierra Preservation Council, Inc.*, 322 F.3d at 1077.

Therefore, the identity of claims determination turns on whether Plaintiffs were obligated to supplement their complaint, or, in other words, whether the "cutoff date" for claim preclusion should be when Plaintiffs filed the 2007 action or when the 2007 action was resolved by judgment.  The Ninth Circuit has held that "the doctrine of res judicata bars the relitigation of all events which occurred prior to entry of judgment, and not just those acts that happened before the complaint was filed."  *Monterey Plaza Hotel Ltd. P'ship v. Local 483, Hotel Employees*, 215 F.3d 923, 927-28 (9th Cir.2000).  In addition, res judicata "operates to bar any claims that could have been raised, not just those that actually were made."  *Id.* at 928.  In the first action filed on July 24, 2007, Plaintiffs make allegations regarding the ownership of the allotments, the Bedkes' rejection of the permit, and the threat to impound and sell their cattle if they do not sign the permit.  Then, on September 6, 2007, less than two months after Plaintiffs filed their first action, the cattle were actually sold by Defendants.  The settlement in the first action was not reached until nearly one year after the sale of the cattle, August 7, 2008.

The allegations in the second complaint center around the actions of the local, state, and federal entities when actually impounding and selling Plaintiff's cattle.  These allegations are certainly related to the first action and are a natural continuation of the same transaction in the first action, which discussed the wrongful actions of the government in threatening to impound the cattle.  Moreover, at oral argument Plaintiffs expressed their understanding that, at least in some respects, the settlement reached in the first action *actually encompassed* the impoundment and sale of the cattle, even though it was not alleged in the complaint.  Plaintiffs stated that the terms of the settlement were that Defendants kept the money from the sale of the cattle and Plaintiffs waived their damages for trespass.

Plaintiffs could have, and should have, supplemented their complaint in the 2007 action to encompass the actions taken by the Defendants when the cattle were actually impounded and sold.  Claims that Plaintiffs could have brought before the 2007 action was resolved by settlement

1   and judgment in 2008–all of the claims regarding the impoundment and seizure of the cattle,

2   which is all of the claims asserted in this action–are subject to claim preclusion. *Monterey Plaza*

3   *Hotel*, 215 F.3d at 928.

4                    ii.      **Final Judgment on the Merits**

5          While Plaintiffs argue that because the 2007 case was resolved through a settlement and

6   not trial, there was no final judgment on the merits, Ninth Circuit law holds to the contrary.  "[A]

7   stipulated dismissal of an action with prejudice in a federal district court generally constitutes a

8   final judgment on the merits and precludes a party from reasserting the same claims in a

9   subsequent action in the same court." *Headwaters, Inc. v. U.S. Forest Service,* 399 F.3d 1047,

10  1052 (9th Cir. 2005).  Here, the stipulated dismissal following settlement was in the same court as

11  the current action, and the Court finds that it constitutes a judgment on the merits.

12                   iii.     **Privity Between Parties**

13         There are three identical parties in the 2007 action and this action: Bill Baker, Twin Falls

14  District BLM Manager; Ken Miller, Burley BLM Field Manager; and Michael Courtney, BLM

15  Rangeland Management Specialist.  The remainder of the Defendants are new.  The long list of

16  additional defendants can be categorized by federal, state, and county: (1) Federal Defendants:

17  Secretary of the Interior, Ken Salazar; U.S. Department of the Interior; U.S. Bureau of Land

18  Management; Tom Dyer, Idaho State BLM Director; Loren Good, Special Agent-in-Charge

19  Idaho BLM Law Enforcement Division; and Lisa Schutzberger, BLM District Law Enforcement

20  Ranger; (2) State Defendants: Idaho State Police; Idaho State Brand Department; Larry A.

21  Hayhurst, Idaho State Brand Inspector; and Boyd Richins, Deputy Brand Inspector; and (3)

22  County Defendants: Cassia County Sheriff's Department; Randy Kidd, Cassia County Sheriff;

23  Cary Bristol, Cassia County Undersheriff; Robert Nay, Sergeant in the Cassia County Sheriff's

24  Department; Paul Christensen, Cassia County Commissioner; Clay Handy, Cassia County

25  Commissioner; Dennis Crane, Cassia County Commissioner; and Alfred E. Barrus, Cassia

26  County Prosecuting Attorney.

27         "[W]hen two parties are so closely aligned in interest that one is the virtual representative

28  of the other, a claim by or against one will serve to bar the same claim by or against the other."

1   *Nordhorn v. Ladish Co., Inc.*, 9 F.3d 1402, 1405 (9th Cir.1993) (internal citations omitted); *see*

2   *also United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 697 (9th Cir. 1984) ("A person

3   technically not a party to the prior action may be bound by the prior decision if his interests are so

4   similar to a party's that that party was his 'virtual representative' in the prior action.") When

5   deciding whether a party shall be bound by a prior judgment, courts typically look to the

6   following factors: (1) whether there is a close relationship between the named party and the

7   nonparty; (2) identity of relevant interests between the named party and the non-party; (3)

8   substantial participation or control by the non-party in the named party's suit; and (4) adequate

9   representation by the named party, which is a pre-requisite to a finding of virtual representation.

10   *Irwin v. Mascott*, 370 F.3d 924 (9th Cir. 2004).  "[P]arallel legal interests alone, identical or

11   otherwise, are not sufficient to establish privity [. . . ]."  *Headwaters Inc. v. U.S. Forest Service*,

12   399 F.3d 1047, 1054 (9th Cir. 2005).

13         Looking first to the Federal Defendants, the Court finds privity.  In the 2007 action, the

14   defendants were three BLM employees: Bill Baker, Ken Miller, and Michael Courtney.  There

15   are three additional BLM employees sued in this action: Tom Dyer, Idaho State BLM Director;

16   Loren Good, Special Agent-in-Charge Idaho BLM Law Enforceent Division; and Lisa

17   Schutzberger, BLM District Law Enforcement Ranger.  The BLM itself is also named as a party.

18   In addition, the U.S. Department of the Interior and the Secretary of the Interior, Ken Salazar are

19   named.  The BLM is an agency within the Department of the Interior.  The BLM employees

20   named in the first action have a close relationship with the other BLM employees, the BLM itself,

21   and its parent agency and employees at the Department of the Interior.  Their interests in

22   upholding the actions of the BLM, its parent agency, and their employees with respect to the

23   grazing rights and treatment of the Bedkes, are aligned such that the original parties served as

24   virtual representatives of the additional Federal Defendants named in this action.

25         While there the Court finds privity as to the additional Federal Defendants, as the original

26   suit pertained only to Federal Defendants, the relationship between the original Federal

27   Defendants and the current additional County Defendants is not sufficiently aligned to establish

28   privity.  The County Defendants rely on *ITT Rayonier* as standing for the proposition that "a state

government agency and a federal government agency, who work together to enforce a particular law or process, have a sufficiently similar interest so as to create privity between them for purposes of the doctrine of res judicata."  County Defs.' Mot. for Summ. J'ment at 6.  In *ITT Rayonier*, the state of Washington's Department of Ecology ("DOE") and the federal Environmental Protection Agency ("EPA") held concurrent enforcement powers as to pulp mills' implementation of effluent guidelines pursuant to a permit issued by the DOE under the Federal Water Pollution Control Act.  627 F.2d at 1000.  The DOE issued a compliance order against Rayonier, which was appealed to state court and resulted in a state court judgment.  *Id.* at 999. The EPA then also instituted its own enforcement action in federal court.  *Id.*   Rayonier asserted that res judicata precluded the EPA from bringing the second action.[1]

The Ninth Circuit observed that the state and federal agencies had "dual" or "concurrent" enforcement authority and that  "it is undisputed that DOE maintained the same position as the EPA before the state hearings board and state courts."  *Id.* at 1001. Unlike in *Rayonier*, the County Defendants do not argue that the BLM and Cassia County had concurrent enforcement authority to regulate grazing permits or that Cassia County could act in the same position as the BLM in enforcing those permits.  Instead, it appears that the County Defendants were simply acting in a general law enforcement capacity by assisting a federal agency in its enforcement of land rights.  The relationship between the Federal Defendants and County Defendants are not sufficiently aligned to support a finding of privity.

The County Defendants argue that they were "by implication" and "at least theoretically" named as parties in the 2007 action because Plaintiffs named "John Does 1-10" and "All Real Persons" as defendants.  However, they cite no case law applying res judicata to persons who could have been named in the past action solely because the Plaintiffs named Doe defendants. Should the Court accept their argument, it would destroy the privity requirement in any case

---

[1]  *ITT Rayonier* was thus the opposite situation that the Court is presented with here because the agencies were on the offensive and the target of multiple agency prosecutions was the party asserting res judicata; here the individual plaintiffs are on the offensive with the multiple agencies asserting res judicata.

1   where Doe defendants are added as parties because it does not require an alignment of interest; it

2   simply requires that a party claim it could have been named in place of a Doe defendant and was

3   not.

4          For the foregoing reasons, the doctrine of res judicata applies to the Federal Defendants,

5   and the Motion to Dismiss all claims against them is GRANTED WITH PREJUDICE.  The

6   County Defendants' Motion for Summary Judgment based on res judicata is DENIED.[2]

7                    **B.      Section 1985 Claim**

8          Both the County Defendants and the State Defendants argue that the Section 1985 claims

9   should be dismissed.  Plaintiffs' 1985 claim does not involve an interference with federal officers,

10  courts, or elections, so must be based upon the second clause of Section 1985(2) or the first

11  clause of Section 1985(3).  Section 1985, titled conspiracy to interfere with civil rights,

12  "address[es] equal rights under the law and [is] intended to protect citizens against racial

13  discrimination."  *Stonecipher v. Bray*, 653 F.2d 398, 401 (9th Cir. 1981).  Where a plaintiff fails

14  to allege that he was "the victim of racial or other class-based invidiously discriminatory action,"

15  it is proper for a court to dismiss the action for failure to state a claim.  *Id.*  Here, Plaintiffs fail to

16  allege that the actions of Defendants were because of Plaintiffs' membership in any class, such as

17  a particular race.  Plaintiffs' allegations actually do quite the opposite; their claim is based on the

18  fact that they were treated arbitrarily and inconsistently with other ranchers in the area without

19  alleging any particular reason for the treatment.  Therefore, Plaintiffs' claims are DISMISSED

20  WITHOUT PREJUDICE.

21                    **C.      Section 1983 Claim**

22         Section 1983 provides for a private cause of action against "[e]very person who, under

23  color of law . . . subjects, or causes to be subjected, any citizen of the United States . . . to the

24  deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. §

25  1983.  Requirements for relief under section 1983 are "(1) a violation of rights protected by the

26  _____

27         [2]      As the Court's resolution of the County Defendants' Motion for Summary
    Judgment is not dependent upon the Declaration of Jared Bedke, the Motion to Strike is
28  DENIED AS MOOT.  Likewise, the Motion for Time is DENIED AS MOOT.

Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Plaintiff asserts Section 1983 claims against both the County Defendants and State Defendants.

County Defendants argue that the Cassia County Sheriff's Department is not a "person" as required by Section 1983.  Defendants are correct that a sheriff's department is not a "person" for purposes of Section 1983 litigation.  *Ulibarri v. Shoshone County*, No. CV-09-110-N-EJL, 2010 WL 1794183, at *8 (D. Idaho May 3, 2010) (citing *Vance v. County of Santa Clara*, 928 F. Supp. 993 (N.D. Cal. 1996)).  Plaintiffs' claim against the Cassia County Sheriff's Department is DISMISSED WITH PREJUDICE.

Plaintiffs' Section 1983 claim against State Defendants Idaho State Police, Idaho State Brand Department, and brand inspectors Hayhurst and Richins similarly fails.  The Complaint caption states that Hayhurst and Richins were sued in their official capacities.  Suits against officials in their official capacity is simply "another way of pleading an action against an entity of which an officer is an agent" and will be treated as a suit against the entity.  *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099 (1985).  Therefore, the claims against Hayhurst and Richins are treated as suits against the Idaho State Brand Department.  States, including state agencies, and state officials acting in their official capacities are not considered "persons" under Section 1983.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304 (1989).  As Plaintiffs have failed to allege conduct of a "person" under Section 1983, their cause of action against the State Defendants fails to state a claim, and the Section 1983 claim is DISMISSED WITH PREJUDICE as to the Idaho State Police and Idaho State Brand Department and DISMISSED WITHOUT PREJUDICE as to Hayhurst and Richins.

## IV.   DISPOSITION

For the foregoing reasons, the Complaint is DISMISSED WITH PREJUDICE as to the Federal Defendants.  The Complaint is DISMISSED WITHOUT PREJUDICE as to the Section 1985 Claim against the County Defendants and State Defendants.  The Section 1983 Claim is DISMISSED WITH PREJUDICE as to the Cassia County Sheriff Department, Idaho State Police, and Idaho State Brand Department and DISMISSED WITHOUT PREJUDICE as to Hayhurst and Richins.  The Motion to Strike and Motion for Time are DENIED AS MOOT.

Plaintiffs shall have thirty days from the date of this Order to file an Amended Complaint. Defendants shall have thirty days thereafter to respond.

IT IS SO ORDERED.

DATED: May 19, 2010

Honorable David A. Carter
United States District Judge